I would like to reserve two minutes for rebuttal, please. Yes, again, watch your own time, thank you. Your Honor, we submitted the factual record, and the first thing I'd like to point out in the original complaint is our contention, again, and I'd like to reemphasize that there was no wrongful act alleged in the original complaint. Mr. Hadar is a structural engineer. He purchased errors and omissions insurance from the defendant, and today we're talking about the consecutive policies that he issued, that were issued. The first policy, the original complaint was filed during the first policy period. It had boilerplate allegations. Mr. Hadar, however, they did not contain any allegations referencing structural defects in the property, at the property in the underlying matter. This was emphasized to the district court. He read the district court, as Wilson read the complaint, differently, but I'd ask the Court to, because we're on a de novo standard, to, again, look at that original complaint. What do you mean by no structural defects? I mean, they talk about construction defects, and it had several defects and problems causing physical injury and property damage, including, but not limited to, defects in windows, doors, finish work, deck installation, stucco plumbing, and defects in workmanship and violations of applicable building code provisions. Now, did none of those apply to the later structural? That's correct. The later structural defects that arose were seismic and vertical loading. In a nutshell, those are defects that pertain to whether or not the building was going to collapse, either due to seismic wind loads or weight loads because of the roofer issues pertaining to that. None of the defects the Court looked at, and I think the Court's looking at paragraph 15 of the original complaint, are implicated. And then it later says they allege that it may additionally be effective in ways and to an extent not now known, and they'll amend to allege additional defects. Agreed. That would be speculation on what might be alleged at a later time. Virtually every complaint can be amended at some later point in time, but what we're looking at, what was alleged at the time of the original complaint, and then, of course, we deal with the issue of what was actually going on. And in this context, and evidence was submitted to the District Court, Mr. Hadar was actually at the property to receive the phone call from the plaintiffs, knew that the case involved water intrusion, later on met with the plaintiff's attorney, Mr. Strom, and that's indicated both in Mr. Hadar's declaration and Mr. Strom's declaration. But all of these things you're talking about come within the definition of structural engineering services. A structural engineer can do all of the things that are in the first complaint and in the second complaint. And, indeed, if I recall correctly, he did.  So I don't, I'm not quite following why the fact they mentioned certain things that a structural engineer can do in the first complaint and additional structural engineering things in the second complaint, understanding why there's any difference. Your, I would, I would suggest that the things that are alleged in the original complaint are not things that are certainly not typically done by a structural engineer. They are all within the structural engineer's ability because a structural engineer can do everything an architect and a civil engineer can do. They're all within including mobilizing, supervising, and managing a construction project. And that's what this guy did. Well, only in theory. That's not what he actually did in his capacity as a structural engineer. He prepared the structural plans, which went to the seismic and vertical loading issues and essentially the framing. I believe it's indicated that he also, maybe because he was an owner, but he also was on the scene helping guide the construction. He was actually doing the managing, which is mobilization and supervision, of the construction itself. But I'm understanding why in the world he makes a unilateral decision that he shouldn't inform the insurance company that he's been sued for things that are within his structural engineering business. The answer to that is he didn't believe that. First, he didn't believe. He had a subjective belief that these were not structural engineering issues. He also had a commercial liability. It was named as an additional insured on the contractor's policy. So what was done is he tendered it to the liability carrier for the contractor, who was also named in the lawsuit. Why in the world does what he unilaterally believes get him off the hook in terms of being required to notify the insurance company that claims have been made that might be covered by his structural engineering policy? How did he get off the hook by saying, oh, well, I didn't think so in any way. I thought I was afraid that if I notified them, gee, they might not renew my insurance the next time around. How does that excuse the problem that he was sued for his structural engineering services, including but not limited to certain kinds of defects, and the second time it's amended and he's still being sued for structural engineering services? I can only reiterate again, he didn't believe, and that's based on conversations with the plaintiff's counsel himself and also his lawyer at the time's conversations with plaintiff's counsel. I can tell you in typical water intrusion cases, this is something that would come right under the standard CGL policy and you have resultant damage. Where is the definition of, is there a definition in the policy of structural engineer or elsewhere? There is no definition of structural engineer. The closest thing is under wrongful act, it refers to professional services. And there's a definition of professional services, but how do we know? And he was insured as a structural engineer, but how do we know what that covers? It doesn't say in the policy. I can only say that based on the facts of what was going on, that he was insured as a structural engineer, but I can't say that based on the facts of what was going on, that he was legally qualified to perform all the services that he was legally qualified to perform for others. In his practice as an architect, engineer, land surveyor, et cetera.  And as a structural engineer, he's legally qualified to perform all these services we're talking about. So that's what it covers, what it says. Your Honor, well, I can't. Legally qualified to perform. I can only say that based on the facts of what was going on, that's not his understanding of what was covered. I can't say it any other way. I find this case difficult to understand in some ways. But even if the first policy covered him, included allegations that covered him as a professional engineer, that doesn't mean that the second complaint, I don't mean the policy, the first complaint. The second complaint now added a specific professional negligence claim with respect to facts that weren't even known at the time the first complaint was filed. So it could be a second claim for professional negligence. And the answer to this thing might be that he's covered for some of this but not others of it. Well, that's correct. And that's where the second policy is implicated. The condition J is what Westport relies on to say that the second complaint or the first amended complaint artificially is deemed first made on the date the original complaint was filed. And in our brief we discuss that. That's not fair for a number of reasons. They say if it's related and on the assumption that the original complaint did have structural complaints in it, that's not fair because there's no obligation for him to report these theoretical or potential claims that were made. And also... He may have known that he didn't do it right, but he didn't know that anybody was complaining about it. That's correct. Also in the reporting requirements in the policy, there are specific requirements on what is required to be reported. You have to report the alleged wrongful act, the summary of the facts upon which it is based, the date it was occurred, and who else would have potential claimants, who is making this claim. And that was impossible under the policy's definition of what has to be reported as well. So there are essentially two questions. One is whether the first complaint includes things, something that should have been reported. And the second is whether it includes this, these particular structural problems. Correct. And also at a minimum, isn't this an issue that can be... We're here because of summary judgment. Don't these create tribal issues as to what claims were actually being made and whether or not they're fairly tied back? Okay, well, you're over time, so thank you very much. Thank you. May it please the Court, Amy Minor on behalf of Westport Insurance Corporation. And addressing a couple of points that counsel was just raising with regard to the issue of the potential claim. Potential claim is defined as a wrongful act or encompasses a wrongful act. Wrongful act being your awareness of an act, error, or omission. It is not a claim, it is not a right that has been asserted. It's not a suit that's been filed. It's not a notice that's been given to you. It's just your personal awareness that you've possibly done something that may eventually lead to a claim. Which is not the situation we have here because there has been a, there was a suit. Our inquiry started when the suit was filed in the first policy period. So we are to the degree that a potential claim can be an issue under the policy. It's not in this situation because there is a claim. What he was saying was this, that it could be that there were two claims here. The claim that was made in the first, the original complaint and the claim that was, and this additional claim with regard to the structural issues that was made in the First Amendment complaint. And if you regard those as two separate claims, then at the time of the first claim, the second one was potential. That seems to me to be what he's saying. Well, I guess I don't know for sure what he's saying. I guess the idea is if he's saying that he doesn't know what he's done, but he thinks he might have done something wrong. Is that what you mean, Your Honor? Well, theoretically, he did know what he did. The buyers of the house might have not known what he did, but he knew what he did. Right. Yes. Well, I agree with the points that Justice Fernandez was making that the scope of structural engineering encompasses, it's very broad. How do we know that? Is there a definition in the record somewhere? No, there's not. There's not. There's an application that's filled out that they indicate which of their specialties, and it's just more there are societies and looking that up to see what a structural engineer does in the scope of their profession and what they are licensed, what they're licensed to do. You haven't put any evidence of that at this point. I'm sorry? Neither side has put in any evidence at this point of what a structural engineer does. I mean, when the policy says services that an insured is legally qualified to perform, presumably that has to mean in their professional capacity. I mean, anybody, I mean, I'd be, I guess, legally qualified to be a construction manager. I'm not sure about that, but I think you don't need a license to do that. I can manage the construction of my own house, which is essentially what he was doing. So the fact that he was allowed to do it can't be the answer. The question is, was he allowed to do it with his professional hat on or licensed to do it with his professional hat on? Do we know that under this, on the record? We know that under the statutes of California, do we not? The Business and Profession Code so provides. Correct. When in the first complaint, in your view, alleges liability in his capacity as a structural engineer? Well, I can, there were a number of paragraphs that we focused on as primary examples out of the original complaint. It was paragraph 2, there's just a few of the examples, but 2, 11, 13, 18, and 24. As an example, 18 is very broad. It indicates that, in relevant part, defects arose out of deficiencies in design, specifications, materials, planning, supervision, observation of construction, and or development. Okay. And as I understand his argument, it's that, look, windows and doors leak or something, and that's a construction problem, maybe negligent construction and so on. And that's not what we're really arguing about. What we're arguing about later is things that are discovered only when an expert examines the place and some of the walls are exposed and the place hasn't been tied down and the beams are too long and it won't be able to withstand seismic activity and things. And that's, in his view, I think, a completely new claim. I gather that's his argument. I think, if I may, the specifics that are in the complaint are much more specific than just a general, there were problems with the house. I mean, it gets involved with physical injury and property damage. It talks about defects in doors and windows and in their installation, defects in the finish work, defects in deck installation and waterproofing, the exterior stucco, plumbing, defects in workmanship, and violations of applicable building code provisions. Okay. That's the first complaint still, right? Yes. This is the original complaint. But none of those things that you just listed deal with what was later discovered, right? They wouldn't cover this when they took off the drywall and found that the structure was not put together properly. It violated the building codes. Is that true? Do we know that? Well, I'm not an expert in structural engineering, but my understanding from this claim is that, yes, the violations of building codes, the defects in the workmanship, and that scattered throughout here are things that would I thought he was being sued for design, not for defects in workmanship. Violations of applicable building code provisions. Is that in the record? Do we know that? I don't know that. I don't know that these were violations of building codes. Were they? Does the second complaint allege that they were violations of building codes? The second complaint contains all of these same allegations, but then they add some more specifics. Right. And I'm asking you something specific about the specifics. Does it allege that they were violations of the building codes? Very well might. I just don't know. Yes. Yes. Where is that? I see. Okay. I see where it is. It's on page 86. It would be helpful if you knew where it was. I'm sorry. Go ahead. So that we do feel that these allegations in the original complaint did put Mr. Hadar, make him aware that there were claims against him for activities in his professional services. The amended complaint built on those, and because of the condition J which was mentioned, which is basically a relation back that if two claims arise out of the same acts and errors and omissions, it relates back to the date of the first, which would be the original complaint. And because we did not get notice during the policy period when that original complaint was first made, the amended complaint also. I find that very difficult. I mean, the facts of this case, it may work all right. But let's suppose that you had a first complaint, which clearly did not allege professional negligence. That was not debatable. Okay. But it did complain about various things wrong with his house and about him with his hat on as owner, failed to disclose things and so on. Then you have a second complaint during the second policy period, which is similar to the one that was actually filed. There's no way that he could have given notice of, under my hypothetical, of professional negligence, of a professional negligence claim in the first instance, even though the claims are related. So, I mean, he has to be able to report it during the first period, and the condition J language doesn't seem to take account of that. Well, he's going to be, even with your hypothetical, and if I can clarify, in this instance, Mr. Hadar was also the engineer of record. So he was. Yeah, but he was also the owner. So we had two hats. That's why there's a problem in this case at all. And he could have been being sued, and he was being sued in part with the other hat, even leaving aside construction management. Right. Well, and we have reserved our rights going back. We have proceeded with this claims made and reported summary judgment ruling on the assumption that there actually have been professional services performed for others. There is a reservation in that if, because he was really working for himself in this, he really wasn't performing professional services for others. But that's an issue that's been preceded with the assumption. The breadth of your interpretation of condition J and as applying, requiring the reporting during the first period of separate claims, even if they couldn't have been anticipated, if they were related, are you saying that if they couldn't have been anticipated, then they're not related? Well, it's, if I understand correctly, it's really two different analyses that could be applied, whether you're looking to see if they're all related to the same property right, or on the second hand, if you're looking just to see if they're related, whether you're applying a logical or a causal relationship. The case law in both instances have been found to be questions of law and that the causal connection and the logical connection can reach back to the original complaint. Okay. Thank you very much. Your time is up. Thank you, counsel. Thank you. The case of Hare v. Westport Insurance Company is submitted, and we will go on to Riesco v. Salton Company.
judges: Canby, Fernandez, Berzon